Timothy COLLINS, Plaintiff,

v.

**STATE OF ALASKA and Division of Marine Highway Systems, Defendants.**

No. C84–418V.

United States District Court, W.D. Washington.

April 30, 1985.

Steven R. Pruzan, of Miracle, Pruzan, Morrow, Pruzan & Johnson, Seattle, Wash., for plaintiff.

James P. Moynihan, of Bauer, Moynihan & Johnson, Seattle, Wash., for defendant.

VOORHEES, District Judge.

Having considered the motion of plaintiff for partial summary judgment and the motion of defendant for summary judgment, together with the memoranda, affidavits, and exhibits submitted by counsel, and, having heard and considered the oral argument of counsel, the Court now finds and rules as follows:

1. This case, which is apparently one of first impression, involves a conflict between two strong public policies, one upholding collective bargaining, the other protecting the rights of seamen. At issue is whether a provision in a labor contract can foreclose plaintiff from asserting the traditional remedies of an injured seamen.

2. The facts in this case are not controverted. In December, 1983, the plaintiff was a seaman aboard the M/V COLUMBIA, a vessel in the fleet of ferries owned and operated by defendant. Plaintiff's complaint alleges that on December 5, 1983, he fell into a void of that vessel and was injured. He alleges that the cause of his injury was the failure by defendant to provide guardrails and adequate lighting on the vessel. Plaintiff claims his right to the traditional remedies of a seaman: damages for negligence under the Jones Act and for unseaworthiness of the vessel as well as the payment of maintenance and cure.

3. At the time of his accident plaintiff was a member of the Inlandboatmen's Union of the Pacific (hereinafter IBU). As part of the collective bargaining agreement which was then in effect between that union and the defendant, there was the following provision:

> 9.01 In lieu of Wages, Maintenance and Cure, remedies for seaworthiness and other seamen's remedies including Jones Act remedies, employees shall be entitled to Alaska Worker's Compensation benefits.

4. After his injury plaintiff applied for and received time loss benefits in the sum of $13,213.78 under this provision of the agreement. His medical bills in the sum of $6,022.11 were paid under that same provision.

5. Plaintiff has moved for partial summary judgment, striking defendant's affirmative defense that this provision of the collective bargaining agreement is a bar to plaintiff's action. Plaintiff has also moved for dismissal of defendant's counterclaim for damages for his alleged breach of the labor contract between defendant and the IBU. Defendant has filed a cross-motion for summary judgment of dismissal, contending that the collective bargaining agreement bars plaintiff's claim.

6. Historically, of course, seamen have been the wards of admiralty. As Justice Story stated in *Harden v. Gordon*, 11

F.Cas. 480, 485 (C.C.D.Maine 1823) (No. 6047):

> [T]he most rigid scrutiny is instituted into the terms of every contract, in which they engage. If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable. Hence every deviation from the terms of the common shipping paper, (which stands upon the general doctrines of maritime law,) is rigidly inspected; ... [a]nd on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.

7. Plaintiff has not contended, nor does it appear that he can contend, that there was any inequality in the bargaining strengths of the IBU and defendant in their negotiation of the terms of the collective bargaining agreement in question.

8. With respect to that collective bargaining agreement the Court finds that the provisions of that agreement provide an adequate *quid pro quo* for the replacement of the traditional maritime remedies of covered seamen by a right to workmen's compensation.

9. The seamen within the bargaining unit derived a number of advantages in being able to pursue their claims under the Alaska Workers' Compensation Act (hereinafter AWCA), rather than being required to pursue their traditional remedies through court proceedings. Not the least of those advantages was the nonapplicability of the doctrine of comparative negligence. ALASKA STAT. Section 23.30.-045(b). The Act also creates a statutory presumption in favor of coverage and provides for attorney's fees for services rendered in connection with a claim. ALAS-KA STAT. Sections 23.30.120, 23.30.145. Benefits paid under the statute appear to be relatively generous. For example, for temporary total disability an injured employee is paid 80% of his net income. ALASKA STAT. Section 23.30.185. The AWCA provides for injured employees a speedy and assured means of obtaining compensation for injuries. This is by contrast with the slower and less certain remedies provided by the courts.

10. It is true, of course, that some injured seamen might receive higher benefits by the exercise of their traditional rights of seamen. Other seamen might, however, receive higher benefits under the AWCA. In this Court's opinion it was well within the competence of the IBU to negotiate an agreement which it felt provided the greatest good to the greatest number of its injured members.

11. The remedy provided by the collective bargaining agreement for injured seamen is, of course, but one of many aspects of that agreement. Its table of contents reveals the many areas covered by the agreement. Plaintiff has enjoyed many benefits under the agreement. He now seeks to disavow only that provision which affects the remedies available to him upon being injured. The employees in a bargaining unit cannot, however, be permitted to pick and choose among the provisions negotiated by their collective bargaining representative, to ratify those they like and to disavow those they do not. Permitting that practice would reduce collective bargaining to a shambles. Those who are bound by a collective bargaining agreement must accept the bitter with the better.

12. Plaintiff contends that the purported exchange of rights was illusory since, he asserts, he was covered under the Alaska Workers' Compensation Act before the collective bargaining agreement was entered into. This appears, however, not to be correct. Although an Alaskan statute purported to cover ferry workers under the AWCA, it has been twice held that, despite that statute, injuries sustained by seamen were within the exclusive jurisdiction of

admiralty and were not compensable under the Act. *Alaska Industrial Board v. Alaska Packers Assn.*, 13 Alaska 178, 186 F.2d 1015 (9th Cir.1951); *Anderson v. Alaska Packers Assn.*, 635 P.2d 1182 (Alaska 1981). Plaintiff came under the coverage of the AWCA only because of the collective bargaining agreement between defendant and the IBU.

13. Plaintiff also contends that he should not be bound by the collective bargaining agreement because he did not vote on it and was not given an explanation of the nature and extent of the rights which were surrendered. Plaintiff is estopped from making this argument, however, by his seeking and accepting of benefits under the AWCA. Moreover, our nation's labor laws have extinguished plaintiff's right to order his own relations with his employer. *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967). In a collective bargaining unit, it is the collective bargaining representative which is given the power to negotiate the terms of the labor contract between the employer and the employees. If plaintiff is aggrieved by the terms of the collective bargaining agreement negotiated by his union, his remedy lies in an action against the union for a violation by it of its duty of fair representation. See *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

14. The Court is of the opinion and finds that where, as here, the terms of a freely-negotiated collective bargaining agreement come into conflict with the traditional remedies of a seaman, and where, as here, an adequate *quid pro quo* has been demonstrated for the relinquishment of the traditional remedies, the terms of the collective bargaining agreement are controlling and must be given effect.

15. The Court finds, therefore, that plaintiff's claims are barred by the collective bargaining agreement entered into between the IBU and the defendant. Because this ruling is dispositive, the Court need not rule upon defendant's motion that plaintiff's action be dismissed because it is allegedly in violation of the Tenth and Eleventh Amendments to the United States Constitution.

Accordingly, defendant's motion for summary judgment is GRANTED. The action of the plaintiff is DISMISSED WITH PREJUDICE. The sole remaining issue is defendant's claim against plaintiff for breach of the collective bargaining agreement.

Defendant's counsel shall advise the Court whether defendant proposes to pursue its counterclaim against plaintiff for breach of the collective bargaining agreement.