Dale C. BROWN, Appellant,

v.

STATE of Alaska and Division of Marine Highway Systems, Appellees.

No. S–3811.

Supreme Court of Alaska.

Aug. 30, 1991.

---

David S. Teske, David S. Teske & Associates, Seattle, Wash., for appellant.

James P. Moynihan, Bauer, Moynihan & Johnson, Seattle, Wash., and Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal of the superior court's order granting summary judgment to the State of Alaska and Division of Marine Highway Systems (state), dismissing the plaintiff sailor's complaint for relief under the Jones Act and the doctrine of unseaworthiness. We reverse.

### I

The facts of this case are not disputed. Dale Brown was employed as a marine engineer by the Alaska Marine Highway System (AMHS) when he was injured while working on board the M/V Aurora on December 31, 1984. Brown suffered a knee injury while acting in the course and scope of his employment as a sailor.

Brown was a member of the Marine Engineer's Beneficial Association (MEBA) and was operating under a union contract at the time of his injury. Section 9.03 of this contract states, "Employees shall be entitled to Alaska Worker's Compensation Benefits in lieu of remedies for wages, maintenance and cure, unseaworthiness, and negligence for illness and injuries incurred while in the service of the Employer." Brown has received benefits for his knee injury under the Alaska Workers' Compensation program, including biweekly payments, payment of medical bills, and vocational rehabilitation training.

In October of 1986 Brown brought an action against the state in the United States District Court for the Western District of Washington, asserting claims based on the Jones Act and the doctrine of unseaworthiness. The action was dismissed after the Ninth Circuit Court of Appeals held in a similar case that the eleventh amendment to the United States Constitution bars a state-employed sailor from suing the

state in federal court. *Collins v. State of Alaska*, 823 F.2d 329 (9th Cir.1987).

Brown then filed this action in the superior court, again asserting causes of action based on the Jones Act and the doctrine of unseaworthiness. The court granted summary judgment in favor of the state on June 23, 1989. Brown appeals.

### II

The United States Constitution extends the federal judicial powers to "all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2. Section 9 of the Judiciary Act of 1789 implements this constitutional extension of judicial power to maritime cases:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333 (1988). This court has previously commented on the effect of the "saving to suitors" clause:

This statute reserves to the federal courts in admiralty exclusive jurisdiction over *in rem* admiralty actions, that is, claims in the nature of maritime liens to be enforced usually against vessels. Generally, the "saving to suitors" clause means that a suitor asserting an *in personam* admiralty claim may elect to sue in a "common law" state court through an ordinary civil action. In such actions, the state courts must apply the same substantive law as would be applied had the suit been instituted in admiralty in a federal court.

*Shannon v. City of Anchorage*, 478 P.2d 815, 818 (Alaska 1970) (footnotes omitted). In this case, Brown's sole avenue is through the state courts because the eleventh amendment to the United States Constitution bars a state-employed sailor from suing the state in federal district court. *See Collins*, 823 F.2d at 329.[1]

---

1. We have previously determined that the state is subject to suit under the Jones Act and the admiralty doctrines of maintenance and cure

and unseaworthiness. *State v. Brown*, 794 P.2d 108, 111 (Alaska 1990).

The substantive rules of maritime law, as modified by the Jones Act, apply in savings clause cases under the Jones Act. *Shannon*, 478 P.2d at 818. Brown's unseaworthiness claim is a federal maritime tort, thus it is governed by the existing body of federal substantive law. *Barber v. New England Fish Co.*, 510 P.2d 806, 808 (Alaska 1973).[2]

## III

Sailors are historically the wards of admiralty, and the courts have long accorded them special protection. *See Harden v. Gordon*, 11 F.Cas. 480, 485 (C.C.D.Maine 1823) (No. 6,047) (Story, J.). As a result of common law development and legislative action, an injured sailor today can avail himself of three important rights: the maritime-law right to maintenance and cure, the maritime-law right to recover damages for injuries caused by the unseaworthiness of the vessel, and the Jones Act right to recover damages caused by an employer's negligence. Section 9.03 of the MEBA contract affects all three of these rights, and we must briefly discuss each of them before considering the validity of the contract.

### A

"Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). The duty to provide maintenance and cure "is imposed by the law itself as one annexed to the employment. Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident." *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932) (citation omitted). "When the seaman becomes committed to the service of the ship the maritime law annexes a duty that no private agreement is competent to abrogate.... This duty does not depend upon fault." *De Zon v. American President Lines*, 318 U.S. 660, 667, 63 S.Ct. 814, 818, 87 L.Ed. 1065 (1943).

Although maintenance and cure has sometimes been analogized to workers' compensation, it is in fact a superior right:

The shipowner's liability for maintenance and cure resembles that of an employer subject to a Workmen's Compensation Act only in that it is a liability without fault which is based on the employment relationship. The shipowner's liability is not restricted to injury or illness "arising out of" or causally related to the seaman's shipboard duties; except for injury and illness caused by the seaman's gross and willful misconduct or existing at the time the seaman signed on and knowingly concealed by him, the shipowner is liable for any injury which occurs or any illness which manifests itself while the seaman is under articles.

G. Gilmore & C. Black, *The Law of Admiralty* § 6-6 (2d ed. 1975). Furthermore, the right to maintenance and cure, unlike workers' compensation, is not exclusive. When considered in conjunction with the sailor's right to recover for negligence and unseaworthiness, "[t]he 'poor and friendless' seaman is ... the beneficiary of a system of accident and health insurance at shipowner's expense more comprehensive than anything yet achieved by shorebound workers." *Id.*[3]

2. State courts may apply their own standard of review to maritime cases under the "saving to suitors" clause. *Maxwell v. Olsen*, 468 P.2d 48, 51–52 (Alaska 1970). This is an appeal from a grant of summary judgment involving purely questions of law, therefore review is *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

3. To this extent, even if we accepted the state's argument that these rights could be exchanged for an adequate *quid pro quo*, it is doubtful that such an exchange exists in this case.

## B

The doctrine of unseaworthiness, like maintenance and cure, arose under the general maritime law, *Cortes*, 287 U.S. at 370–71, 53 S.Ct. at 174, developing in American admiralty courts from the late nineteenth century. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 544, 80 S.Ct. 926, 929, 4 L.Ed.2d 941 (1960). Beginning in the 1940s, the Supreme Court significantly expanded the shipowner's duty to provide a seaworthy vessel, such that the availability of actions under this doctrine is an important right for injured sailors. *See* G. Gilmore & C. Black, *The Law of Admiralty* §§ 6–38 through 6–44(a) (2d ed. 1975). Shipowners are under an absolute duty to provide a vessel and appurtenances reasonably fit for their intended use. *Mitchell*, 362 U.S. at 549–50, 80 S.Ct. at 932–33; *see also Morales v. Galveston*, 370 U.S. 165, 169, 82 S.Ct. 1226, 1229, 8 L.Ed.2d 412 (1962); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946) ("[T]he liability is neither limited by conceptions of negligence nor contractual in character. It is a form of absolute duty owing to all within the range of its humanitarian policy.") (citations omitted). The duty also is nondelegable. *Sieracki*, 328 U.S. at 100, 66 S.Ct. at 880. Damages recoverable under this doctrine include pecuniary and nonpecuniary losses, as well as punitive damages under some circumstances. *Dyer v. Merry Shipping Co.*, 650 F.2d 622, 623, 626–27 (5th Cir. 1981).

## C

The Jones Act provides a right of action for injury or death to sailors caused by the negligence of their employers. It reads in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.App. § 688(a) (1988).

The language concerning the rights and remedies of railway employees has the effect of extending to sailors the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1988). *Mitchell*, 362 U.S. at 546–47, 80 S.Ct. at 930–31. Most importantly, sailors have the right to sue shipowners for damages for injury or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such [shipowner], or by reason of any defect or insufficiency, due to its negligence, in its ... equipment." 45 U.S.C. § 51 (1988).

A Jones Act plaintiff enjoys two significant advantages over the plaintiff in a common-law negligence case. First, the standard of care owed to a sailor is higher than the common-law standard. As Justice Cardozo noted:

> We do not read the [Jones Act] as expressing the will of Congress that only the same defaults imposing liability upon carriers by rail shall impose liability upon carriers by water. The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties. This court has said that "the ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly." ... Out of this relation of dependence and submission there emerges for the stronger party a corresponding standard or obligation of fostering protection.

*Cortes*, 287 U.S. at 377, 53 S.Ct. at 176. Second, the Jones Act plaintiff's burden on the issue of causation has been described

as a "featherweight." G. Gilmore & C. Black, *The Law of Admiralty* § 6–36 (2d ed. 1975). That burden is satisfied if the plaintiff establishes "that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Ferguson v. Moore–McCormack Lines, Inc.,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957); *Robin v. Wilson Brothers Drilling,* 719 F.2d 96, 97 & n. 1 (5th Cir.1983) (approving jury instruction to the effect that "negligence is a legal cause [in a Jones Act case] if it played any part, no matter how slight, in bringing about or actually causing the injury or damage").

Section 5 of FELA closely limits the ability of an employer to restrict its own liability: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void...." 45 U.S.C. § 55 (1988). The Supreme Court has found that "Congress wanted § 5 to have the full effect that its comprehensive phraseology implies." *Boyd v. Grand Trunk Western R.R. Co.,* 338 U.S. 263, 265, 70 S.Ct. 26, 27, 94 L.Ed. 55 (1949) (quoting *Duncan v. Thompson,* 315 U.S. 1, 6, 62 S.Ct. 422, 424, 86 L.Ed. 575 (1942)); *see also Brice v. National R.R. Passenger Corp.,* 664 F.Supp. 220, 224 (D.Md.1987) ("The purpose of Section 55 is to insure that the employee is compensated to the full extent of his loss."). Whether an agreement violates section 5 of FELA is a federal question to be decided by federal law. *South Buffalo Ry. Co. v. Ahern,* 344 U.S. 367, 372, 73 S.Ct. 340, 342, 97 L.Ed. 395 (1953). We turn now to the validity of section 9.03.

## IV

■ The state's primary contention is that sailors can contract away any right provided a) the sailor understands the contract and b) there is an adequate *quid pro quo.* In support of this the state directs our attention to general statements made by Justice Story in decisions handed down while he was riding circuit in the early nineteenth century. *Harden,* 11 F.Cas. at 480; *Brown v. Lull,* 4 F.Cas. 407 (C.C.D.Mass.1836) (No. 2,018). Although *Harden* is generally credited for establishing the proposition that sailors are wards of admiralty, it scarcely provides the last word in deciding the issues before us in this case.

The state also urges us to follow the decision of the district court in *Collins v. State of Alaska,* 621 F.Supp. 722 (W.D.Wash.1985), *aff'd on other grounds,* 823 F.2d 329 (9th Cir.1987), upholding a contractual provision virtually identical to the one in this case. While conceding that *Collins* has no precedential value,[4] the state asserts that "the reasoning of the district court is sound." We disagree. In concluding that a union could bargain away sailors' common-law rights of maintenance and cure and seaworthiness and statutory rights under the Jones Act provided it received an adequate *quid pro quo,* the district court's brief opinion engages in no analysis of the nature of those rights or the stringent protection they have been given by courts. As the following discussion makes clear, such an analysis convinces us that section 9.03 is invalid.

## A

■ The federal courts have consistently stated that sailors' rights to maintenance and cure cannot be abrogated by contract. *E.g., Cortes,* 287 U.S. at 371, 53 S.Ct. at 174; *Gardiner v. Sea–Land Service, Inc.,* 786 F.2d 943, 946 (9th Cir.), *cert. denied,* 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986); *Barnes v. Andover Co.,* 900 F.2d 630, 637 (3d Cir.1990). The right to recover under the doctrine of seaworthiness is also plainly not susceptible to contractual modification. *Sieracki,* 328 U.S. at 94–95, 66 S.Ct. at 877. Section 5 of FELA establish-

---

**4.** For some reason, the court addressed the merits of the case before determining whether the eleventh amendment prevented it from having jurisdiction. *Collins,* 621 F.Supp. at 725. On appeal, the court of appeals determined that the eleventh amendment did in fact bar Collins's suit. *Collins,* 823 F.2d at 333.

es a similarly strict prohibition against any contractual limitation of a shipowner's liability. These principles, all of which Section 9.03 violates, preclude the validity of the MEBA contract irrespective of the presence of a *quid pro quo.*

Several federal circuit courts have upheld contracts which set the *rate* of maintenance and cure, even though the contractual rate was clearly too low to provide the injured sailor with food and lodging. *Al-Zawkari v. American S.S. Co.,* 871 F.2d 585, 588 (6th Cir.1989); *Macedo v. F/V Paul & Michelle,* 868 F.2d 519, 522 (1st Cir.1989); *Gardiner,* 786 F.2d at 949–50. *But see Barnes,* 900 F.2d at 637 (rejecting proposition that clearly inadequate rate does not amount to abrogation). Even the courts enforcing an inadequate rate, however, generally make clear that total abrogation is not allowed. *Al-Zawkari,* 871 F.2d at 588 ("duty to provide maintenance cannot be *entirely* abrogated") (emphasis in original); *Gardiner,* 786 F.2d at 946; *see also Dowdle v. Offshore Express, Inc.,* 809 F.2d 259, 263–64 (5th Cir.1987) ("[T]here is a fundamental difference between contractual regulation of the rate of maintenance payments and contractual elimination of such payments altogether.").

Section 9.03, by exchanging Alaska Workers' Compensation coverage for maintenance, impermissibly abrogates the right to maintenance and cure for an important class of sailors: those who become ill or are injured while in the service of the state, but whose illness or injury is not related to their work. The right of maintenance and cure attaches for any illness or injury that occurs while the sailor is "subject to the call of duty," *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 732, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943), without regard to whether it is work-related:

> [The] employer's responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes.
>
> . . . .

... [U]nlike the statutory liability of employers on land it is not limited to strictly occupational hazards or to injuries which have immediate causal connection with an act of labor.

*Id.* at 732, 734, 63 S.Ct. at 934, 936; *see also Warren v. United States,* 340 U.S. 523, 529–30, 71 S.Ct. 432, 435–36, 95 L.Ed. 503 (1951) (sailor on shore leave injured in Italian dance hall entitled to maintenance and cure); *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 527, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938) (illness need have no causal connection whatsoever to ,employment to entitle sailor to maintenance and cure).

By way of contrast, an employee covered by the Alaska Workers' Compensation laws is entitled to benefits only if his illness or injury is causally connected to his employment: "[T]he idea is to rule out cases in which claimant can show neither that the injury occurred in the course of employment nor that it arose out of it, as where he contracted a disease but has no evidence to show where he got it." *Burgess Construction Co. v. Smallwood,* 623 P.2d 312, 316 n. 4 (Alaska 1981) (quoting 1 A. Larson, *Workmen's Compensation Law* § 10.33, at 121 (1978)). Even though the workers' compensation law contains a liberal presumption in favor of compensability, AS 23.30.120(a)(1), it is not equivalent to the unconditional right to maintenance and cure historically guaranteed sailors. Rather than merely fixing a rate of entitlement, which in at least some circuits would be permitted, section 9.03 has the effect of totally eliminating the entitlement under certain circumstances. We find this to be an impermissible abrogation of the right.

### B

Section 9.03 also impermissibly seeks to restrict the shipowner's liability under the doctrine of unseaworthiness. As noted above, the Supreme Court long ago emphasized that the shipowner's liability for the seaworthiness of its vessel "is neither limited by conceptions of negligence nor contractual in character." *Sieracki,* 328 U.S. at 94, 66 S.Ct. at 877. The Court

subsequently concluded that necessary consequences of this "absolute duty," *id.* at 95, 66 S.Ct. at 877, are that the "obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or by the absence of contracts and that the shipowner's obligation is rooted, not in contracts, but in hazards of the work." *Reed v. Steamship Yaka,* 373 U.S. 410, 414–15, 83 S.Ct. 1349, 1352–53, 10 L.Ed.2d 448 (1963).

Section 9.03 limits the state's obligation to provide a seaworthy vessel by substantially limiting liability should the state breach its duty. Section 9.03 would allow the state to escape, for example, liability for any pain and suffering caused to sailors by the unseaworthiness of its vessels, as well as—in the case of a sailor killed by the state's breach of this absolute duty—the loss of society suffered by survivors. *See Dyer,* 650 F.2d at 623 & n. 4. One might argue that the *obligation* still remains, merely the *remedy* has been limited. Indeed, the state makes such an argument with regard to the limitation of its Jones Act liability. Such an argument misses the point: A legal obligation without legal liability would be no obligation at all; similarly, an obligation with limited liability is a limited obligation. We therefore find section 9.03 to be an impermissible limitation of the state's obligations under the doctrine of unseaworthiness.

### C

■ Analogous reasoning applies to section 9.03's limitation of the state's Jones Act liability. As noted above, section 5 of FELA, which is incorporated by reference into the Jones Act, prohibits "*[a]ny* contract ... the purpose or intent of which shall be to enable *any* common carrier to exempt itself from *any* liability created by this chapter." 45 U.S.C. § 55 (1988) (emphasis added). The purpose and effect of this section are as broad as the language indicates. *Boyd,* 338 U.S. at 265, 70 S.Ct. at 27. Contrary to the state's assertion, section 5 does not merely prohibit contracts which would exempt the shipowner from *all* liability; it also clearly prohibits contracts that exempt the shipowner from *any* liability to which it would otherwise be subject.

■ Section 9.03 does purport to effect such a prohibited exemption. A Jones Act defendant, for example, would normally be liable for an injured sailor's pain and suffering. *See* 46 U.S.C.App. § 688(a) (1988) (authorizing "action for damages at law"); *Dyer,* 650 F.2d at 624. Under the terms of section 9.03, however, the state has exempted itself from any such liability. Contrary to the purpose of section 5, injured sailors will not be "compensated to the full extent of [their] loss." *Brice,* 664 F.Supp. at 224.

The state asserts without analysis or citation that "[i]t can hardly be said that the benefits provided by the Alaska Workers' Compensation Act do not compensate injured workers ... to the full extent of their losses." Brief of Appellees 30–31. In fact we have ourselves pointed out that "[t]he purpose of workers' compensation is to compensate the victims of work-r[el]ated injury for a part of their economic loss, measured by the wage loss to the worker or the surviving family." *Wien Air Alaska v. Arant,* 592 P.2d 352, 357 (Alaska 1979). The basic nature of workers' compensation as a trade of potential *full* recovery for certain *partial* recovery is well known: "In accomplishing the goal of securing adequate compensation for injured employees without the expense and delay inherent in a determination of fault as between the employee and employer, the legislature apparently also found it necessary to limit the total amount of the employer's liability to the statutory award." *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 437 (Alaska 1979). One may plausibly argue that such a tradeoff is as appropriate in the maritime context as it is on land. But the law as it stands now explicitly prohibits the exchange. Reconsideration of the wisdom of that policy is for Congress, not the courts.

■ The state directs our attention to cases in which courts have suggested that the compromise of FELA claims do not violate section 5. *Ahern,* 344 U.S. at 371–

72, 73 S.Ct. at 342; *Heagney v. Brooklyn Eastern District Terminal,* 190 F.2d 976 (2d Cir.1951), *cert. denied,* 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952); *Apitsch v. Patapsco & Back Rivers R.R. Co.,* 385 F.Supp. 495 (D.Md.1974). These cases are inapposite, as they all concerned compromise of *accrued* claims. *E.g., Ahern,* 344 U.S. at 372, 73 S.Ct. at 342 (challenged law permits agency "to effectuate private agreements compromising a federal controversy"). Compromise of existing disputes is favored by the courts. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 997 (2d Cir.1983). As a consequence, compromises are assumed to be satisfaction of the plaintiff's claims. *Mitchell v. Mitchell,* 655 P.2d 748, 751 (Alaska 1982). Thus, the valid compromise of a FELA claim is the equivalent of full compensation of the injured sailor. In this sense, a compromise would not violate section 5.

■ Even these post-injury, FELA compromises are, however, "jealously scrutinized" to ensure that the employer does not escape any liability and that the employee receives the equivalent of full compensation. *Ahern,* 344 U.S. at 372–73, 73 S.Ct. at 342–43; *Wink v. Rowan Drilling Co.,* 611 F.2d 98, 100 (5th Cir.), *cert. denied,* 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). In *Apitsch,* for example, the injured railroad worker entered into a post-injury agreement to process his claim under state workers' compensation scheme and to waive his FELA rights. *Apitsch,* 385 F.Supp. at 499–500. The railroad offered this opportunity to the worker based on an agreement with the worker's union to treat such claims under the state workers' compensation law. *Id.* at 498. The court concluded that this "apparent union approval" of the waiver of FELA rights, coupled with the pressure to settle inherent in the employment relationship, rendered the agreement between the railroad and union to process claims under the workers'

compensation laws invalid and the release by the employee of his FELA claims fatally involuntary. *Id.* at 504.

The present case is even clearer than *Apitsch.* Rather than "apparent union approval" of a post-injury compromise, we are faced with a union-mandated, pre-injury release of Jones Act rights. As the railroad's counsel conceded in *Apitsch,* such an agreement "is void *per se* under section 5." *Id.*[5]

The superior court's grant of summary judgment is REVERSED and this case is REMANDED for further proceedings.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

Last year, in *State v. Brown,* 794 P.2d 108 (Alaska 1990), this court held that by passing the Claims Against the State Act (CATSA), AS 09.50.250, the state had waived its sovereign immunity against federal Jones Act claims made by state employees, notwithstanding the exclusive remedy provisions of the Alaska Workers' Compensation Act (AWCA), AS 23.30.055. In dissent, I expressed the view that the enactment of CATSA was not meant to abrogate the effect of the more limited waiver of sovereign immunity in AWCA, and that AWCA provided the exclusive remedy for injured state employees.

Today the court goes one step further, invalidating a fairly bargained union labor contract entered into between the State of Alaska and certain state employees, in accordance with authority conferred by state statute. The court effectively says not only that the state waived its sovereign immunity as far as Jones Act liability is concerned, but also that the state may never immunize itself from such liability, either through statute or negotiation. For the reasons expressed in my prior dissent, *Brown,* 794 P.2d at 111, and because I believe that this court now shows an even

---

5. Brown has not sued for maintenance and cure, apparently on the theory that section 9.03 provides a *rate* of maintenance and cure—that is, workers' compensation benefits. As this opinion makes clear, section 9.03 is completely invalid. Thus, Brown may wish to make a Civil

Rule 15(a) motion to the superior court to amend his complaint to add a claim for maintenance and cure. *See* Alaska R.Civ.P. 15(a); *Rutledge v. Alyeska Pipeline Service Co.,* 727 P.2d 1050, 1054 (Alaska 1986).

greater willingness to sacrifice state sovereignty to federal supremacy without a clear federal constitutional requirement that it do so, I must again dissent.