Nancy ABBOTT, Appellant,

v.

STATE of Alaska and Division of Marine
Highway System, Inc., Appellees.

No. S–7390.

Supreme Court of Alaska.

May 14, 1999.

Eric Dickman, Seattle, Washington, for Appellant.

Thomas J. Slagle, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before COMPTON, Chief Justice, MATTHEWS, EASTAUGH, and FABE, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

This appeal raises questions about the timeliness of maritime claims filed by Nancy Abbott against her employer, the Alaska Marine Highway System (AMHS), nearly five years after she suffered a work-related injury. The superior court held that the three-year limitations statutes barred her claims. But Abbott's delay in suing was due to her reliance upon a contractual provision which limited her to workers' compensation for work-related injuries. She sued within a reasonable period after learning that, in an appeal not involving Abbott, we had declared that contractual provision illegal and unenforceable. We therefore conclude that the statutes of limitations were equitably tolled and that Abbott's maritime claims are not time barred. We reverse and remand.

### II. FACTS AND PROCEEDINGS

Abbott suffered burns while working as a cook aboard AMHS's M/V Aurora on April 23, 1988, when a deep fat fryer blew hot grease on her face and ear. She also allegedly suffered psychological injuries that have prevented her from working as a chief cook.

Abbott was off work until May 8. She was released to work beginning May 9. She received workers' compensation benefits in accordance with the collective bargaining agreement (CBA) between AMHS and her union, the Inlandboatmen's Union (IBU). Abbott's workers' compensation coverage also paid for counseling. On October 3, 1988, AMHS controverted "all medical and disability benefits associated with claimant's current, past or present psychological problems as a result of 4/23/88 work injury."

The then-current CBA conferred workers' compensation benefits for injured AMHS sailors in lieu of the maritime remedies provided by the Jones Act, 46 U.S.C. app. § 688 (1987), and general maritime law. Section 9.01 of the CBA provided that "[i]n lieu of Wages, Maintenance and Cure, remedies for unseaworthiness and other seamen's remedies, including Jones Act remedies, employees shall be entitled to Alaska Workers' Compensation Benefits."

In August 1991 we decided Brown v. State.[1] We there held that a similar provision in another CBA, which also conferred workers' compensation benefits in lieu of traditional maritime remedies, violated the Federal Employers' Liability Act (FELA),[2] by impermissibly limiting the shipowner's liability under the Jones Act.[3] Following federal precedent, we also held that the "swap" provision in Brown's CBA violated the rights of seamen to recover under the maritime doc-

---

1. 816 P.2d 1368 (Alaska 1991).

2. 45 U.S.C. § 51–60 (1988). Section 5 of the FELA prohibits "[a]ny contract ... the purpose or intent of which shall be to enable any com-

mon carrier to exempt itself from any liability created by this chapter." 45 U.S.C. § 55.

3. See Brown, 816 P.2d at 1375.

trines of unseaworthiness and maintenance and cure, and that these rights could not be modified by contract.[4] *Brown* thus effectively prevented the State from enforcing section 9.01 of the AMHS–IBU CBA in effect when Abbott was injured.

About five months after we issued the *Brown* opinion, the AMHS claims adjuster sent Abbott a form letter dated January 30, 1992. It told her of the holding in *Brown* (without giving that decision's name or citation); it also informed her that she was no longer covered by workers' compensation, but instead could avail herself of the traditional maritime remedies if she was injured while working aboard a vessel in navigation. *Brown* identified three important rights available to injured sailors: "the maritime-law right to maintenance and cure, the maritime-law right to recover damages for injuries caused by the unseaworthiness of the vessel, and the Jones Act right to recover damages caused by an employer's negligence."[5] We will sometimes refer to these three rights as "traditional maritime remedies."

Abbott claimed that she first learned of the possibility of pursuing traditional maritime remedies when she received the adjuster's letter on February 1 or 2, 1992. On February 4, 1993, nearly five years after she was injured, and a few days more than one year after she received the adjuster's letter, Abbott filed a complaint against the State and AMHS (collectively the State) in superior court. The complaint asserted claims for the traditional maritime remedies.

The State moved for summary judgment, contending that Abbott's claims were time-barred by the three-year statutes of limitations for maritime remedies. The superior court granted the motion. It held that the statutes of limitations barred Abbott's Jones Act and unseaworthiness claims and that laches barred her maintenance and cure claim. It also held that equitable tolling was not appropriate because Abbott "[did] not provide an adequate explanation why suit was not filed until nearly a year and a half after the *Brown v. State* decision." It also awarded attorney's fees and costs to the State.

Abbott appeals from the summary judgment and the attorney's fees award.

## III. *DISCUSSION*

### A. *The Federal Maritime Statutes of Limitations Should be Tolled.*

■ The issue before us is whether the federal statutes of limitations, which apply to Abbott's maritime claims against the State, should be tolled. This issue presents a question of law, to which we apply our independent judgment.[6]

■ The parties agree, and we do not question, that Abbott is a seaman. As such, her claims arise under federal maritime law. Her negligence claim against the State is governed by the Jones Act.[7] It is well settled that the rights of Jones Act seamen against their employers are fixed by the rules set forth in the FELA;[8] the FELA's three-year limitation period applies to injured seamen who file negligence claims.[9] Abbott's unseaworthiness claim is governed by the Uniform Statute of Limitations for Maritime Torts; that statute's three-year limitations period applies to injured seamen who file unseaworthiness claims.[10] Although there is some question whether the Uniform Statute of Limitations for Maritime Torts or the doc-

---

4. *Id.* at 1374–75.

5. *Id.* at 1371.

6. *See Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988) ("The standard of review on issues of law is de novo or independent judgment."); *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 766–67 (Alaska 1987) (reviewing de novo superior court's computation of limitations period).

7. *See* 46 U.S.C. app. § 688.

8. *See id.; see also American Dredging Co. v. Miller,* 510 U.S. 443, 455–56, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); *Kernan v. American Dredging Co.,* 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); *Lies v. Farrell Lines Inc.,* 641 F.2d 765, 770 (9th Cir.1981).

9. *See* 45 U.S.C. § 56.

10. *See* 46 U.S.C. app. § 763a (1987).

trine of laches [11] determines the timeliness of her maintenance and cure claim,[12] we need not resolve that question. As the superior court noted, the three-year limitations period would guide us even if we were to apply a laches analysis to Abbott's maintenance and cure claim.[13]

Because Abbott was injured on April 23, 1988 and did not file suit until almost five years later, her claims are time barred unless the applicable federal statutes of limitations are tolled. Invoking Alaska's equitable tolling doctrine as set forth in *Dayhoff v. Temsco Helicopters, Inc.,*[14] Abbott concludes that the federal limitations periods should be equitably tolled. The State, relying on a combination of federal and Alaska state precedent, disagrees with Abbott's conclusion.

■ As a threshold matter, we note that federal law, not state law, governs the tolling issue. By enacting federal statutes of limitations to govern maritime claims, Congress manifested a desire to achieve uniformity in the treatment of maritime claims. To allow the diverse laws of each state to determine when the limitation period on a federal cause of action is tolled, interrupted, or suspended would tend to defeat the congressional policy of uniformity. Therefore, we apply federal law here.[15]

■ Federal precedent permits equitable estoppel or equitable circumstances to extend the three-year limitations period. Many federal cases seem to merge these two doctrines.[16] For example, *Seattle Audubon Society v. Robertson*[17] stated that equitable tolling may be applied when plaintiffs are "prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant."[18] But it is only equitable estoppel that requires wrongful conduct on the part of the defendant, i.e., fraud or misrepresentation.[19] The federal equitable toll-

11. Laches is "neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as bar in court of equity." *Black's Law Dictionary* 875 (6th ed.1990).

12. See *Ferris v. Veco Inc.,* 896 F.Supp. 966, 966 n. 1 (D.Alaska 1995) ("It appears that the Ninth Circuit, when and if it decides this issue in a published opinion, will conclude that [a maintenance and cure claim] is analogous to a maritime tort and therefore covered by the limitation period [in section 763a].") (citing *Usher v. M/V Ocean Wave,* 27 F.3d 370 (9th Cir.1994)); *McKinney v. Waterman S.S. Corp.,* 739 F.Supp. 678, 681 (D.Mass.1990), *aff'd,* 925 F.2d 1 · (1st Cir.1991) (concluding that, although section 763a does not expressly apply to maintenance and cure claims, "the three-year limitation period of Section 763a [should be] used as a standard to determine the allocation of burdens in connection with a laches defense"); *Reed v. American S.S. Co.,* 682 F.Supp. 333, 336–38 (E.D.Mich.1988) (applying laches to maintenance and cure claim, and using six-year statute of limitations for contracts to determine timeliness, because claim was for unearned wages).

13. See *McKinney,* 739 F.Supp. at 681.

14. 772 P.2d 1085, 1087 (Alaska 1989).

15. See *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 435, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (refusing to apply state savings statute to toll federal statute of limitations under FELA and instead fashioning federal rule to preserve congressional policy of uniformity underlying FELA statute); *Prejean v. Industrial Cleanup, Inc.,* 721

So.2d 1273, 1275 (La.1998) ("Where suit is begun in a state court on a federally created cause of action and there is a federal period of limitations applicable, state courts uniformly apply the federal period and, if they exist, the federal rules on tolling and other ancillary matters."); J.P. Ludington, Annotation, *Accrual of Cause of Action & Tolling of Limitation Period of § 6 of the Federal Employers' Liability Act,* 16 A.L.R.3d 637, 646 (1967) ("Federal rather than state law applies in deciding questions as to the tolling of the limitation provision of [FELA].").

16. See *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452 (7th Cir.1990) (noting that many cases "fuse the two doctrines"); *see, e.g., Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir.1996); *Walck v. Discavage,* 741 F.Supp. 88, 91 (E.D.Pa.1990) (stating that equitable tolling may be appropriate if "the defendant has actively misled the plaintiff").

17. 931 F.2d 590 (9th Cir.1991), *rev'd on other grounds,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).

18. *Id.* at 595.

19. See Thomas J. Schoenbaum, 1 *Admiralty and Maritime Law* § 6–16, at 295 (2d ed. 1994) ("What this means is that estoppel will save the plaintiff's claim only where the facts show that he has been induced or tricked by the defendant into letting the deadline pass."); *see also Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (holding that defendant may be equitably estopped from as-

ing doctrine, on the other hand, does not require any conduct by the defendant.

Abbott has not alleged fraud, misrepresentation, or concealment, or other conduct sufficient to support a claim that the State should be equitably estopped from invoking the three-year limitations periods. We therefore only consider whether the federal equitable tolling doctrine will permit Abbott to avoid the bar of the statutes of limitations.

■ Federal precedent equitably tolls the limitations period in three circumstances: (1) where the plaintiff has actively pursued his or her judicial remedies by filing a timely but defective pleading; [20] (2) where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim; [21] or (3) where the plaintiff, by exercising reasonable diligence, could not have discovered essential information bearing on his or her claim.[22] We conclude that Abbott's case falls most comfortably into the third category.

■ Abbott's CBA provided that injured employees were entitled to workers' compensation benefits in lieu of traditional maritime remedies. In her declaration, Abbott stated that until she received the adjuster's letter she "relied on what the State told [her], that is, that [her] only remedy or claim against the State was under Alaska Workers' Compensation." She asserted that the letter gave her the first notice that she had any other possible remedy, and that, after receiving the letter, she spoke with her union, which referred her to Washington attorney Brad Doyle, who first informed her of the

*Brown* opinion. She further declared that, before she spoke with attorney Doyle, she had consulted other attorneys regarding other work-related injuries, and that none of the other attorneys had ever advised her that she had any remedies other than workers' compensation. Likewise, she asserted that her union did not advise her that she had a remedy other than workers' compensation until after she received the State's 1992 letter. Based on these declarations we conclude that Abbott could not have reasonably discovered that she had a remedy other than workers' compensation until the 1992 letter arrived.[23]

Because tolling is an equitable doctrine which applies when both parties are innocent of wrongdoing, equity requires that we also consider whether its application will unjustly prejudice the defendant.[24] We conclude that it will not. Abbott's workers' compensation injury report gave the State notice of her injury and claims.

The State argues that it is "naturally prejudiced" by the delay. Its generic statement is not sufficient to establish prejudice. It has not argued that Abbott's supervisor or co-workers (or other potential witnesses) are unavailable; that it can no longer determine which fryer Abbott was using or whether it malfunctioned; or that it no longer has records regarding the condition of the fryer or instructions for its use. Nor has it explained what possible additional prejudice occurred after the State gave Abbott notice that she might have maritime remedies.

serting limitations defense under FELA); *Cada,* 920 F.2d at 450 ("[E]quitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time.").

**20.** *See Burnett,* 380 U.S. at 430, 85 S.Ct. 1050.

**21.** *See Hanger v. Abbott,* 73 U.S. (6 Wall.) 532, 542, 18 L.Ed. 939 (1867) (equitably tolling statute of limitations on breach of contract claim because courts in southern states closed during Civil War); *Seattle Audubon,* 931 F.2d at 595–96 (equitably tolling fifteen-day limitations period because unconstitutional statute and district court's erroneous upholding of that statute barred plaintiffs from filing claims which they sought to litigate); *Osbourne v. United States,* 164 F.2d 767, 768–69 (2d Cir.1947) (equitably tolling maritime statute of limitations because plaintiff

held in Japan during Second World War was unable to file timely claim in court).

**22.** *See Cada,* 920 F.2d at 452.

**23.** The State argues that Abbott's two unsworn "declarations" are not admissible evidence cognizable under Alaska Civil Rule 56(e). We need not consider this argument, because the State did not attack the declarations on that ground in the superior court. *See Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).

**24.** *See Seattle Audubon,* 931 F.2d at 597–98 (considering whether equitable tolling of statute of limitations would unjustly prejudice defendant).

We also note that the State had ample incentive to investigate the accident thoroughly even if it had no reason to anticipate that Abbott might pursue maritime remedies. First, a workers' compensation claim can lead to subrogated claims against the manufacturer or servicer of an appliance. Second, an interest in preventing similar injuries to other employees should have encouraged AMHS to investigate the accident and inspect the fryer after Abbott reported the accident.

We therefore conclude that equitable tolling in this case will not cause unjust prejudice to the State.

### B. Calculation of the Period of Tolling

■ The federal cases suggest two methods of applying the equitable tolling doctrine. The "suspension approach" suspends the statute of limitations during the period in which conditions that justified the tolling were in existence.[25] Alternatively, the "reasonable time approach" tacks on extra time after the statutory limitations period has run if the plaintiff needs it.[26] Under this approach, the plaintiff must file suit within a reasonable time after the abatement of the circumstances which justify the tolling.[27] But we need not choose between the two federal approaches to resolve this case because Abbott's claims are timely under either method.

Because the CBA was in effect when Abbott was injured, the suspension approach would give her the entire three-year limitations period in which to file her complaint for her traditional maritime remedies. The limitations period would start running when Abbott first learned or could have of learned that she could pursue those claims. As we concluded in Part III.A, Abbott first reasonably could have learned that she could pursue federal maritime claims when the adjuster's letter arrived. Abbott filed suit on February 4, 1993, well within three years of receiving the letter. Therefore, her federal maritime claims are timely under the suspension approach.

We also conclude, as a matter of law, that Abbott filed suit within a reasonable period of time after she learned or could have learned that she could sue. Again, the pertinent interval is the time between the date the adjuster's letter arrived and the date Abbott filed suit. Abbott's delay of just over one year was reasonable. The 1992 letter did not fully explain how the *Brown* decision might affect Abbott. It simply informed her that she might have maritime remedies which her CBA had expressly denied her. The letter did not state that she might be entitled to pursue those remedies with respect to her April 23, 1988 injury. It did not mention that injury. It also noted that claims for negligence and unseaworthiness required proof that the State was negligent or the vessel was unseaworthy, and that her negligence would diminish her recovery.

It was reasonable for Abbott to confer with her union and knowledgeable counsel about these newly revealed possible remedies. It was also reasonable to evaluate liability, comparative negligence, and damages issues before filing suit. It was also reasonable for her to consider whether, as the State's letter intimated, sailors might be better off keeping the workers' compensation benefits they had received than pursuing maritime claims. Under these circumstances, Abbott did not act unreasonably or in bad faith by not filing suit before February 4, 1993.

Considering that the applicable statutory limitations periods are three years, that Abbott diligently and promptly pursued her workers' compensation remedy after she was injured, that she reasonably believed until 1992 that workers' compensation was her only remedy, and that the adjuster's 1992 letter required her to reassess the remedies available to her and to confer with counsel, we are unwilling to say that a post-notice delay of one year and a few days is unreasonable under the "reasonable time" approach.

**25.** *See, e.g., Burnett,* 380 U.S. at 434–36, 85 S.Ct. 1050; *Billings v. Chicago, Rock Island and Pac. R.R. Co.,* 581 F.2d 707, 710 (8th Cir.1978).

**26.** *Cada,* 920 F.2d at 452.

**27.** *See id.* at 453.

We therefore conclude that Abbott's maritime claims are timely under both the suspension approach and the reasonable time approach.

We decline to decide which approach a federal court would apply to Abbott's case, because the choice of approaches is a matter of federal law, the choice is not dispositive in this case, and the parties have not squarely argued the issue in their briefs.

### C. *Attorney's Fees*

Because we reverse the judgment against her, the award of attorney's fees against Abbott must be vacated.

### IV. *CONCLUSION*

Because the three-year maritime statutes of limitations were equitably tolled, Abbott's February 1993 lawsuit was timely. We therefore REVERSE and REMAND.

BRYNER, Justice, not participating.