**Mauro Evaristo BLANCO,**
**Plaintiff-Appellant,**

v.

**MORAN SHIPPING COMPANY and Sulphur Carriers Corporation,**
**Defendants-Appellees.**

No. 73-2130
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1973.

Rehearing and Rehearing En Banc
Denied Nov. 8, 1973.

Gerald Sohn, Jacksonville, Fla., Charles Maloney, New Orleans, La., for plaintiff-appellant.

James F. Moseley, Jacksonville, Fla., for defendants-appellees.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Summary judgment at the hands of the district court, based upon an exceptionally strong written release of all claims ended this seaman's action by Blanco. The motion for summary judgment was based upon depositions by the attorneys who represented Blanco at the time he gave the release. Counter-affidavits were submitted by Blanco and by one of his present attorneys.

The issue is framed in the language of the classic test set out in Garrett v. Moore-McCormick Company, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239, 245 (1942):

> . . . the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with a full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

This circuit has paraphrased the *Garrett* test in this language:

> . . . the burden is on the party setting up the seaman's release to show that it was given by the seaman with an informed understanding of his rights and a full appreciation of the consequences of his release.

Cates v. United States, 451 F.2d 411, 414 (1971).

The shipboard accident giving rise to this action occurred on July 24, 1967 in Tampa, Florida waters and resulted in Blanco's hospitalization in Tampa General Hospital. Following his discharge from this hospital, Blanco went to Jacksonville, Florida where his ship was then

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

in dry dock and came under the care of a doctor there. He subsequently was released from the ship and thereupon employed a Jacksonville attorney who spoke and understood only English. Blanco spoke and understood only Spanish. To make communications more difficult, Blanco subsequently returned to his native Venezuela. When a settlement offer eventuated, Blanco's English-speaking attorney deposed:

> I wrote Mr. Blanco in April of 1968 that I needed to get a statement from him as to how his injuries were currently bothering him, what sums he owed for doctors and medicines, the number of times he has been treated by a physician for his injuries since the first of February.

> I don't think I ever got any intelligent reply to that. Every letter I had was not responsive to it, but I believe about the time I associated Victor Ramos in the case and—I'm certain I did by October, 1968.

> I see one letter that is translated by Mr. Ramos. It says, and this is from Blanco—"as of this moment I have no report".

Victor Ramos, referred to in this testimony, is another Jacksonville attorney who was associated by Blanco's first counsel because of Ramos' literacy in both Spanish and English. The deposition given by Ramos similarly appears to have been based solely upon the medical reports covering the Tampa hospitalization or the Jacksonville doctor's treatment.

In his counter-affidavit, Blanco swears that he had accident-related plastic surgery at the University Hospital in Caracas, Venezuela in January, 1969 which was shortly prior to the consummation of the settlement. He further avers that when settlement was first advised by his then attorneys, he demurred because he needed additional such surgery and did not want to bear the expense himself. He also inconsistently declared under oath in the same affidavit that he did not understand the legal effect of the release and executed it because he thought it represented no more than a receipt for his wages aboard ship. The other counter-affidavit, by one of Blanco's present counsel, contends that Blanco may have a right of action under Liberian law because of the vessel's registry and an additional action under American law because the vessel might be a "flag of convenience vessel". The affidavit of counsel further swears that he must have the answers to previously filed but yet unanswered interrogatories to know whether Blanco possessed this additional potential claim at the time he was advised to settle—information which would go to the adequacy and efficacy of the legal advice he then received.

The district court utilized the correct legal test from *Garrett.* In applying it to the facts the court found that there was no genuine issue as to Blanco's understanding of the nature and legal effect of the release that he executed or as to the fact that Blanco had intimate knowledge of the various medical procedures which had been performed on his own face. The court also found Blanco had been afforded "adequate legal advice". The problem lies in this latter finding. The depositions of counsel show that their advice to Blanco was given without knowledge of his Venezuelan surgery. Counsel Ramos described the medical report he examined as "very mild". The last report referred to by Blanco's English-speaking counsel was dated September 7, 1967. Obviously if counsel were not aware of the subsequent surgical procedures and their costs and sequelae or any prognosis for further surgery, they were in no position to advise their client as to the adequacy of the proposed settlement. There similarly remains unresolved at this point in this cause the legal status of any dual Liberian-American claim Blanco may be able to assert, it is simply unknown whether either counsel was aware of such potential claim or took it into account in arriving at their evaluation.

Giving Blanco the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists [*see* C. Wright, Federal Courts 443 (2d ed. 1970)] we must say on the basis of this summary judgment record that such an issue remains and must be tried. Without the slightest intent of intimating any decision on the merits, we vacate the summary judgment entered herein and remand this cause for further proceedings not inconsistent with this opinion.

Vacated and remanded.