**Joseph A. WINK, Plaintiff-Appellant,**

v.

**ROWAN DRILLING CO. et al., Defendants-Appellees.**

No. 77–2093.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Bruce C. Waltzer, New Orleans, La., David J. Letvin, Joseph Cohn, East St. Louis, Ill., for plaintiff-appellant.

Lawrence J. Ernst, New Orleans, La., for defendants-appellees.

Before MORGAN, RONEY and GARZA, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal involves a seaman's action against his former employer which was dismissed by the district court on grounds of res judicata. In 1974 the seaman simultaneously filed a Fed.R.Civ.P. 60(b) motion to set aside a 1972 judgment in a "friendly Jones Act suit" and a new action against his employer seeking additional damages on the same claim which formed the basis of the prior judgment. In his motion to set aside the seaman alleged that his employer had perpetrated a fraud upon the court and

misled the seaman as to the extent of his injury, his mental competence, and the guarantee of a lifetime job. The court held that the seaman had not met the burden of proving the judgment invalid and, therefore, denied the motion for relief from judgment and dismissed the new action on the basis of res judicata. Because we believe the district court misallocated the burden of proof in this case, we reverse and remand for further proceedings.

## I.

In 1971 Joseph A. Wink, a Jones Act seaman, was working aboard a Rowan Drilling Co. (Rowan) drilling tender in the Gulf of Mexico when he was struck on the head by a joint of pipe. As a result of this accident, Wink sustained a serious head injury requiring immediate medical attention and hospitalization. After his initial treatment involving the surgical removal of the depressed and fragmented bones of his skull, Wink returned to his home in Kentucky where a local surgeon referred him to Dr. William F. Meacham, a neurosurgeon at Vanderbilt University School of Medicine. Dr. Meacham performed a tantalum cranioplasty, a surgical procedure consisting of the insertion of a metal plate into the skull.

Shortly after he was released to return to work, Wink, who was not represented by counsel, agreed to settle any legal claim he may have had against his employer. On March 6, 1972, a seaman's complaint prepared by Rowan's counsel was filed in district court along with medical reports of Wink's treatment. Simultaneously, Rowan filed an answer and a joint stipulation of facts signed by both of the parties. The stipulation of facts stated that Wink was 50 per cent contributorily negligent in causing his injury and limited his recoverable damages to $17,500. On that same day, March 6, the district court approved the settlement and entered a judgment which incorporated and adopted the stipulation of facts.

On June 4, 1974, Wink filed a Rule 60(b) motion to set aside the 1972 judgment alleging primarily that Rowan had misled the court as to the extent of his injuries and his mental competence. On that same date Wink filed a new Jones Act suit against Rowan seeking to recover additional damages for the unjuries he suffered in 1971. The court allowed Wink to take the deposition of Dr. Meacham and, over Rowan's objection, the deposition of Dr. James C. Hallman, a clinical psychologist.[1] The court held that Wink had failed to carry the burden of proving either his own incapacity or fraud and overreaching by the defendant. Accordingly, the court denied the motion for relief from judgment and dismissed the new action on the basis of res judicata.

## II.

It is well established that seamen are the wards of admiralty and that releases or settlements involving seaman's rights are subject to careful scrutiny. The burden is upon the party claiming settlement as a defense to prove that it was entered into by the seaman with a full understanding of his rights. *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 246–48, 63 S.Ct. 246, 87 L.Ed. 239 (1949); *Gueho v. Diamond M. Drilling Co.,* 524 F.2d 986, 987 (5th Cir. 1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976); *Blanco v. Moran Shipping Co.,* 483 F.2d 63 (5th Cir. 1973), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 108 (1974); *Cates v. United States,* 451 F.2d 411, 414 (5th Cir. 1971). "The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." *Garrett v. Moore-McCormack,* 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942).

---

1. Dr. Hallman, who examined Wink in 1975, stated positively that Wink would not have been able to appreciate the implications of the settlement agreement he entered into in 1972. Dr. Meacham's testimony was less favorable to plaintiff's position. He testified that when he examined Wink in 1972 he found him to be "dull" and to have "a very flat effect." However, he concluded that Wink had no neurological disabilities, needed no further treatment, and could return to "full occupational activities."

■ Rowan concedes the validity of these principles but points out that this case does not involve a mere settlement or release but a *final judgment* of a federal district court. According to Rowan, this judgment resulted only after the court was fully satisfied that the seaman understood his rights and appreciated the nature and consequences of the proceeding. Because the court acted independently of the parties in approving the settlement agreement, Rowan argues that we should reject Wink's attempt to characterize the 1972 judgment as a "consent judgment" or "sophisticated seaman's release."

The difficulty with Rowan's argument is that this court has no record of the 1972 proceeding from which to evaluate the degree of independence exercised by the district court in reviewing the proposed settlement. It is of course possible that the court carefully reviewed the stipulation of facts and medical reports, questioned the seaman closely, and made certain that the seaman was entering into a just and fair settlement of his claim. However, it is also possible that the court's investigation was merely perfunctory and fell short of the careful scrutiny commanded by *Garrett* and its progeny. In its memorandum opinion the court referred to its "invariable practice" of carefully explaining to the seaman his rights and alternatives before approving a settlement and stated that it would not allow a party to participate in a proceeding he did not fully understand. Unfortunately, the court's subjective awareness is not available to us in our review, and we are unwilling to make the "leap of faith" necessary to find that the court's invariable practice was followed in this case.

In many respects this case is similar to our per curiam opinion in *Gueho v. Diamond M. Drilling Co.*, 524 F.2d 986 (5th Cir. 1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). There the district court entered a judgment [2] approving a settlement agreed to by the seaman, who was unrepresented, and his employer. La-

ter that same day, the employer terminated the seaman's employment. The seaman then sought relief from judgment on grounds that his employer had led him to believe that the settlement included a promise of continued employment. After a hearing, the court vacated its prior judgment and granted plaintiff's motion for a new trial. In affirming, this court stated *the burden was on the employer* to prove that the seaman had entered into the settlement with an informed understanding of his rights and a full appreciation of the settlement's consequences. The reasons for placing the burden of proof on the employer are even stronger in a case where there is no evidence that the district court became the seaman's "trustee" as required under the wardship theory of *Garrett v. Moore-McCormack Co., supra.*

### III.

Generally, public policy requires that a party seeking relief from a two-year-old judgment should bear the burden of proving that judgment invalid. As in *Gueho*, however, the judgment in this case did not result from a litigated determination of the merits of the case. Both the pleadings and the joint stipulation of facts were prepared by Rowan and agreed to by the seaman without any advice from outside counsel. The court's judgment, filed the same day as the pleadings, mirrors the language used in the stipulation of facts. And, most importantly, the absence of any record of the 1972 proceeding raises the possibility that the court merely rubber-stamped the parties' extrajudicial agreement. We believe that these circumstances require that Rowan, rather than the seaman, bear the burden of proving that Wink was fully capable of understanding the 1972 proceedings and appreciated the consequences of his acts. See *Scola v. Boat Francis R., Inc.*, 546 F.2d 459 (1st Cir. 1976).

■ Accordingly, we reverse the district court and remand with instructions that Wink be permitted to proceed with his new

**2.** Although the *Gueho* opinion does not refer to a court "judgment," a review of the district

court's docket entries reveals that a judgment in favor of plaintiff was entered in that case.

action against Rowan. Rowan may claim the prior settlement as a defense, but it must bear the burden of proving that Wink had an informed understanding of the significance of the settlement when he signed it. Should Wink prevail at trial on this issue, the court should set aside the prior judgment[3] and proceed accordingly.

REVERSED AND REMANDED.

**3.** Although over one year had elapsed from the date of entry of the 1972 judgment when Wink filed his motion to set aside, we believe that this is a proper case for invoking clause (6) of Fed.R.Civ.P. 60(b). See *Clarke v. Burkle*, 570 F.2d 824 (8th Cir. 1978). Furthermore, we believe that plaintiff filed his motion within a "reasonable time" as required by Rule 60(b)(6).