**Dwight BRAXTON**

v.

**ZAPATA OFFSHORE COMPANY.**

Civ. A. No. B–87–0799–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 23, 1988.

Berney L. Strauss, Strauss & Associates, New Orleans, La., for plaintiff.

Chris A. Lorenzen, Crain, Caton, Jones, Houston, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

### I.

Plaintiff filed a seaman's suit, alleging he was injured on August 18, 1984. On February 21, 1985, before filing suit, plaintiff signed a receipt and release in exchange for Five Thousand Dollars ($5,000), paid by Zapata Offshore Company (Zapata).

Defendant, Zapata, moves for summary judgment on the ground that plaintiff re-leased all claims against it, and thus plaintiff's action is barred.

Zapata's motion poses two questions:

(1) whether Zapata carried its burden of showing that the release is valid, and if so,

(2) whether plaintiff produced summary judgment proof sufficient to raise a genuine material fact issue concerning the validity of the release.

### II.

As to Zapata's burden, admiralty courts scrutinize a seaman's release to determine whether the seaman fully understood (a) his rights, and (b) the consequences of the release. *Durden v. Exxon Corp.*, 803 F.2d 845, 847 (5th Cir.1986). A release is not valid unless it has been executed without deception or coercion. *Id.* at 847. One who asserts the defense of "release and receipt" must show the release was freely executed, without deception or coercion, and the seaman, before signing, fully understood his rights. *Garrett v. Morre-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444 (5th Cir.1980). A summary judgment movant must also conclusively demonstrate there are no genuine issues of material fact. *Halliburton*, 620 F.2d at 445. The medical and legal advice available to the seaman, and the consideration given are relevant in assessing a seaman's understanding. *Id.*

In sum, there are essentially four factors to consider in determining whether a release is valid:

(1) The adequacy of the consideration: Was the plaintiff fairly compensated given the extent of his injuries, and the inherent risk of trying the case?

(2) The medical advice available and given to the plaintiff: Was the plaintiff fully advised of his injuries and future prognosis?

(3) The legal advice available and given: Was the plaintiff fully advised of his rights?

(4) The arm lengths of the parties: Was there overreaching?

*See, e.g., Blake v. W.R. Chamberlin Co.,* 176 F.2d 511, 513, n. 1 (9th Cir.1949).

To prove the release's validity, Zapata submitted a transcript of a conversation between plaintiff and a Mr. Buras, Zapata's representative. Mr. Buras recorded their conversation just before the plaintiff signed the release. The full transcript appears at Exhibit A of Zapata Offshore Company's motion for summary judgment ("Transcript").

*The Adequacy of Consideration.*

■ For the following reasons, the court concludes that Zapata carried its burden of showing it gave adequate consideration for the release.

First, plaintiff was advised that he could probably get more money if he filed a lawsuit and won. Defendant's representative stated:

[T]here is a good chance that you would recover more money than $5,000, you understand that?
Plaintiff: Yeah.
. . . .
Defendant: However, I need to tell you that the chances of us winning are slim and the chances of you winning are very good, okay, you understand that?
Plaintiff: Ah huh.
Defendant: But you are willing to accept the $5,000 still?
Plaintiff: Yeah.

*Transcript,* at 10.

Second, Zapata had paid all maintenance and cure and past wages owed to the plaintiff before it paid him $5,000 for executing the release. Zapata also agreed to pay all undiscovered bills for medical expenses incurred before the signing of the release. Thus, the $5,000 was legal consideration, in the sense that it was not a liquidated sum which Zapata had a pre-existing legal obligation to pay to the plaintiff.

Third, given the risks of litigation, it is not enough that plaintiff could possibly receive more money in a lawsuit against Zapata.

Fourth, plaintiff's counsel makes no argument and produces no summary judgment proof showing that the consideration was inadequate.

*Medical Advice.*

■ The release and transcript state:
I hereby represent that I have conferred with a physician concerning the nature and extent of my disability, and I fully understand by having been advised by my physician that the extent of my disabilities is uncertain, b[ut] nevertheless, I am fully satisfied with the settlement which I am making here for the sum of Five Thousand Dollars ($5,000).

*Transcript,* at 6.

The Transcript goes on at 6 and 7:
Defendant ... [a]fter the initial problem was cleared up with the burn, you did have a problem with one of your elbows, is that right?
Plaintiff: Yeah....
Defendant: Okay, and we did let you go see a doctor for that?
Plaintiff: Yeah.
Defendant: And he did tell you that there is a chance in the future there would be some complications?
Plaintiff: Well, he said I may have to take shots, you know, in my arm, cause it gets stiff sometimes.
Defendant: You are aware that that could present you some problems in the future?
Plaintiff: Yeah.
Defendant: In spite of that, you are willing to accept the $5,000 settlement?
Plaintiff: Yeah.
Defendant: Knowing that these future problems will be your responsibility?
Plaintiff: Yeah.

The transcript confirms the wording of the release, and indicates that plaintiff was advised of his medical condition, and understood the future risks of his injury.

Additionally, plaintiff's counsel does not argue that plaintiff's medical advice was inadequate or in any way misleading. Therefore, the court also concludes defendant met its burden of showing that plaintiff understood the severity of his injuries, his

state of recovery and his future prognosis to the extent that he could sign a valid release.

*Legal Advice Received.*

■ The court concludes that the legal advice given to the plaintiff was sufficient to validate the release.

Zapata advised plaintiff that he had a right to get an attorney and file a lawsuit, and that Zapata could not fire him for filing such a lawsuit. Zapata's representative told plaintiff his chances of winning a lawsuit against Zapata were good, and that he would likely get more money. Zapata told plaintiff he could sue Zapata under the Jones Act, or general maritime law. Zapata explained that the Jones Act gave him the right to sue Zapata for negligence:

> [The Jones Act] gives you the right to sue your employer for negligence. That means that ... if you are working on a rig and the guy next to you makes a mistake and causes you to get hurt, that's negligence. You have a right to sue Zapata for the actions of your fellow worker under the Jones Act. Under the Jones Act, you can recover damages, you understand that?
>
> Plaintiff: Yeah.

*Transcript* at 10.

Zapata explained under general maritime law:

> You have the right to sue for unseaworthiness. In other words, you have a right to say, well, the LEXINGTON, there was something wrong with the LEXINGTON, to cause my injuries, and therefore I can sue Zapata, the owner of the LEXINGTON for unseaworthiness, you understand that?
>
> Plaintiff: Yeah.

*Transcript* at 11.

This explanation, coupled with Zapata frankly telling plaintiff his chances of winning were good, convinces the court that plaintiff was fully and fairly advised of his legal rights under the Jones Act and general maritime law. Such advice was sufficient for the plaintiff to make a fully informed decision about whether he should release Zapata.

■ The court would characterize plaintiff's contention that the doctrine of maintenance and cure was not fully explained as frivolous. Plaintiff returned to work within four weeks of the August 18, 1984, accident. He received $1,978 in maintenance during his four weeks off work, almost as much as he regularly earned. After being discharged from further medical treatment and being released to return to full duty, he returned to work on September 20, 1984. Thereafter, he was continuously employed with Zapata until April 9, 1986. After the initial burns cleared up, and plaintiff returned to work, he had a problem with his elbow, and Zapata sent him to a doctor for treatment and paid all bills. As well, the plaintiff was informed at the time of signing the release, that if he signed, any future problems with the elbow would be his responsibility.

All these facts show that Zapata never once reneged on its absolute responsibility to provide for plaintiff's maintenance and cure. Moreover, plaintiff's rapid return to work and continuous employment show that plaintiff was cured, and that maintenance and cure was never an issue for which plaintiff needed detailed legal advice. Finally, plaintiff's counsel does not explain how maintenance and cure is or would be an issue in this case, or how different advice on the subject would have altered plaintiff's willingness to release Zapata from his tort claims.

*Overreaching.*

■ Zapata's evidence showed that (1) plaintiff was advised by a Zapata representative; and (2) plaintiff was graduated from the 12th grade, attended courses in blueprint reading, was a certified welder and completed a 64–hour course in offshore drilling rig maintenance, and attended Jackson County College for one and one-half years. These facts show that plaintiff was intelligent and had the capacity to understand the extensive communications with the Zapata representative. Although plaintiff was not represented by counsel and received information from a representative of Zapata, an interested party, these facts alone do not invalidate the release.

As for financial overreaching, the evidence shows that Zapata withheld no payment it was obligated to pay, and was forthcoming with medical and financial assistance. Indeed, plaintiff received compensation payments totaling almost as much as he would have received in earned wages during the four weeks he was away from work. As well, there is no evidence in the record indicating that Zapata attempted to withhold payment or threatened to drag out any legal action to coerce the plaintiff into settlement. Thus, the court is convinced that Zapata met its burden of showing that there was no overreaching in the instant case.

Having considered and analyzed the above four elements, the court concludes that Zapata carried its burden of showing that (1) the plaintiff signed the release "with a full understanding of his rights and the effects of his action," *Halliburton v. Ocean Drilling & Exploration,* 620 F.2d 444, 445 (5th Cir.1980), and (2) there is no genuine material fact issue concerning the validity of the release.

### III.

56 FED.R.CIV.P. states in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. (emphasis added).

In response to Zapata's motion, plaintiff submitted an affidavit wherein he states, "he did not understand the legal implications of signing said release, and of his rights under the Jones Act.... but that he went ahead and signed because he and his family were in dire financial straits...."

Plaintiff contends the transcript and release mean nothing because his "dire finan-cial straits" impaired his judgment and prevented him from "freely" giving up his rights. Plaintiff's response amounts to nothing more than a conclusion; he does not offer specific facts of his financial condition at the time of signing the release. It is no excuse that discovery in this case is not yet closed because plaintiff has complete and total access to detailed evidence of his financial state. Once Zapata produced summary judgment proof showing that plaintiff's "dire financial strait" contention was implausible, plaintiff had the burden to come forward and generate *specific* facts showing that his "dire financial straits" theory was at least reasonably plausible. Put another way, plaintiff had the burden to show that the inference of "dire financial straits" as contended is reasonable in light of the overwhelming and competing inference that plaintiff was not in a state of dire financial straits. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). He has not come forward with specific supporting facts as required. Accordingly, Zapata's defense of receipt and release is entitled to judicial recognition. The court holds that Zapata is entitled to judgment as a matter of law because it met its burden of showing that the release is valid and plaintiff has not shown that there is a genuine material fact issue to be tried.

### CONCLUSION

Zapata's motion for summary judgment is hereby in all things GRANTED.