**Dayna Haruyo SCHULTZ, Plaintiff,**

v.

**PARADISE CRUISES, LTD., and Star of Honolulu, O.N. 98–079 her engines, boilers, tackle, stores and furnishings In Rem, Defendants.**

**Civ. No. 94–00522 DAE (In Admiralty).**

United States District Court, D. Hawaii.

Nov. 8, 1994.

---

Jay L. Friedheim, Honolulu, HI, for plaintiff.

Evelyn J. Black, Alcantara & Frame, Honolulu, HI, for defendants.

## ORDER DENYING DEFENDANTS' MOTIONS TO ENFORCE SETTLEMENT AND FOR DISMISSAL

DAVID ALAN EZRA, District Judge.

The court heard defendants' motions on November 7, 1994. Jay Lawrence Friedheim, Esq., appeared on behalf of plaintiff; Robert G. Frame, Esq., [Leonard F. Alcantara, Esq. and Evelyn J. Black, Esq.] appeared on behalf of defendants. After reviewing the motions and the supporting and opposing memoranda, the court DENIES defendants' motions to enforce settlement and for dismissal.

### BACKGROUND

Plaintiff Dayna Schultz ("Schultz") was employed as a waitress for defendants Paradise Cruises, Ltd. ("Paradise") and Star of Honolulu, O.N. 980979 ("Star"), (collectively "Defendants"). Schultz alleges she was injured while at work in early May 1994. As part of her job duties she was required to come in at night to practice the hula. While leaving a practice session she slipped and fell on the vessel's wet gangway. A record of the incident was made by Schultz' supervisor.

Schultz states she was in great pain and that she was directed by Defendants to Straub Clinic, Mililani for treatment. X-rays were taken which initially showed no injury. However, a bone scan, performed on June 8, 1994, revealed a "focal disc bulge or herniation." Defendants' Exhibit "C." The report on this bone scan was transmitted to Defendants on June 24, 1994.

Schultz' doctor certified her to return to work on a light duty status. She returned to work for three days but she could not continue because of the pain. Schultz asked to be placed on "light duty," requesting to work one day per week until she recovered. She alleges she was informed by Paradise's manager, Lance Patton, "that it would cost too much" to allow her to work only one day per week and that to retain her job she must work at least four or five days per week. Schultz Affidavit ¶ 15. Schultz resigned from Paradise Cruises shortly thereafter.

On June 21, 1994, Schultz met with Michael D. Rutherford ("Rutherford"), an insurance adjuster with Beaudry Adjusting Co. representing Defendants. Rutherford had phoned Schultz at home, requesting that she come to his office and sign papers. This meeting came three days prior to Defendants' receipt of the medical report with the results of the bone scan. However, Defendants were aware that the scan had been taken and that the results were pending. Defendants' Exhibit "C."

The parties dispute what occurred at this meeting. However, both parties agree that Schultz signed a "Release of All Claims" proffered to her by Rutherford. Both parties also agree that Schultz received a check dated June 23, 1994, for $500.00. The check was not cashed.

Schultz claims that Rutherford asked her to come in to sign papers pursuant to her "leaving the boat." Schultz Affidavit ¶ 18. She asserts that she was under the mistaken impression that she was signing a medical release, to enable the Defendants to pay for her medical expenses and for the lost wages due to her injury and subsequent missed work days. Schultz Affidavit ¶¶ 20, 26, 34, 35.

Schultz claims that Rutherford directed her to sign and print her name at the bottom of the form, while he kept his hand covering the top of the form. The top of the form states, in bold, capital letters "RELEASE OF ALL CLAIMS."[1] Directly above the signature line, where Schultz both signed and printed her name, the form states "CAUTION! READ BEFORE SIGNING." Schultz claims that she was unaware that what she was signing was a release of all her claims against Defendants.

Schultz asserts that Rutherford never allowed her to read the Release, nor did he ever read the paper to her. She contends that she never saw the form in its entirety until October 14, 1994, at her attorney's office. She alleges that Rutherford never told her she would be giving up all her rights by signing the form, and that had she known this she would not have signed the form. Finally, Schultz states that she was on prescribed pain medication and an anti-depressant when she signed the form, and that Rutherford was aware of this fact.

Defendants dispute Schultz' version. Rutherford claims that "after settlement negotiations" on June 21, 1994, both parties agreed to settle Schultz' claims against Defendants for the May 2, 1994 accident. Rutherford Affidavit, September 22, 1994, ¶ 3. Rutherford also states that he was able to obtain Schultz' medical records by her medical care providers without obtaining a medical release from her. Finally, Rutherford states that Schultz told him that she had taught preschool and driven to the meeting on the day she signed the form and that she did not appear to be under the influence of any drugs. Rutherford Affidavit, October 27, 1994, ¶ 4.

## STANDARD OF REVIEW

[1, 2] A motion to enforce settlement is akin to a motion for summary judgment. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958–59 (9th Cir.1994); *Tiernan v. Devoe*, 923 F.2d 1024, 1031–32 (3d Cir.1991). Summary enforcement is inappropriate where material facts concerning the existence or terms of a settlement agreement are in dispute. *City Equities Anaheim*, 22 F.3d 954, 958. In cases involving enforcement of seaman's releases, courts have generally applied the summary judgment standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure. *Braxton v. Zapata Offshore Co.*, 684 F.Supp. 921 (E.D.Tex.1988).

■ Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the

---

1. The top half of the form also states that by signing the form the individual agrees to:

   release, acquit and forever discharge Paradise Cruises/Star of Honolulu of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the 2 day of May 1995, at or near Kewalo Basin, Honolulu, Hawaii.

   I/we hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

   It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of Paradise Cruises, by whom liability is expressly denied.

   This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

   I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act and it is my/our intention to be legally bound hereby.

court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

■ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

**I. Motion to Enforce Settlement of a Seaman's Release.**

■ Seamen have generally been protected as wards of admiralty and any release or settlement involving their rights is subject to careful scrutiny. *Fuller v. Golden Age Fisheries*, 14 F.3d 1405 (9th Cir.1994); *Wink v. Rowan Drilling Co.*, 611 F.2d 98 (5th Cir.), *cert. denied*, 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980).

■ When considering a motion for summary judgment upon the validity of a seaman's release the burden of proof is upon the shipowner. The shipowner must show that the release was executed freely, without deception or coercion, and that it was made by the seaman with a full understanding of his rights and that it was fair to the seaman. *United States v. Johnson*, 160 F.2d 789, 794 (9th Cir.1947), *rev'd in part on other grounds*, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948), (*quoting Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942)).

■ The court must carefully assess whether there is a genuine issue of material fact, and not merely rubber stamp the settlement. *Whaley v. Rydman*, 887 F.2d 976 (9th Cir.1989). The shipowner bears the burden of proving that the seaman had an informed understanding of the significance of the release.[2] *Id.* at 979 (emphasis added).

In *Whaley*, the court cited with approval to *Borne v. A & P Boat Rentals No. 4, Inc.*, 780 F.2d 1254 (5th Cir.1986), which stated that "when a seaman is acting upon independent advice and that advice is disinterested and based on a reasonable investigation, there being no question of competence, a settlement agreement will not be set aside." *Borne*, 780 F.2d at 1258.[3]

---

2. The Fifth Circuit has held that on a motion for summary judgment, "the burden is a heavier one because the shipowner must conclusively demonstrate the absence of a genuine issue of material fact." *Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240 (1991); Fed.R.Civ.P. 56(c); *Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444 (5th Cir.1980).

3. In contrast to the facts here, the seaman in *Borne* acted on advice of counsel, there were no questions of medical or legal competence presented and the settlement was reached after full investigation. Therefore, the court upheld the district court order enforcing the settlement. *See also, Sitchon v. American Export Lines, Inc.*, 113 F.2d 830, 832 (2d Cir.1940); *Wilson v. Western*

■■■ There are several relevant factors the court must consider in determining whether a release is valid. These factors include:

(1) The adequacy of the consideration: Was the plaintiff fairly compensated given the extent of [her] injuries, and the inherent risk of trying the case?

(2) The medical advice available and given to the plaintiff: Was the plaintiff fully advised of [her] injuries and future prognosis?

(3) The legal advice available and given: Was the plaintiff fully advised of [her] rights?

(4) The arm lengths of the parties: Was there overreaching?

*Blake v. W.R. Chamberlin Co.,* 176 F.2d 511, 513, n. 1 (9th Cir.1949); *Castillo v. Spiliada Maritime Corp.,* 937 F.2d 240, 245 (5th Cir. 1991); *Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F.2d 599, 606 (5th Cir.1986). The court's ultimate concern is whether, at the time she relinquished her rights, Schultz did so with an "informed understanding of [her] rights and a full appreciation of the consequences" of signing the release. *Borne,* 780 F.2d at 1256.

Defendants cite to *Braxton v. Zapata Offshore Co.,* 684 F.Supp. 921 (E.D.Tex.1988) to support their position that the validity of a release may be decided by a motion for summary judgment, and that many jurisdictions uphold the enforcement of seamen's releases as a matter of law. However, *Braxton* only granted summary judgment after a careful analysis of the four factors cited in *Blake, supra.* The *Braxton* court determined that on the facts presented the plaintiff had been adequately counseled by the defendant that: (1) he had a very good chance of winning his case if he took it to court; (2) he had been adequately compensated; (3) the medical advice given to him was sufficient to appraise him of the nature and extent of his injuries; and (4) there was

*Oceanic, Inc.,* 540 F.Supp. 228, 232 (S.D.Tex. 1982).

**4.** Insufficient facts have been presented at this time for the court to make a determination on

no evidence presented of overreaching. *Braxton,* 684 F.Supp. 921, 925.

■■ The undisputed facts of the instant case are inapposite to the facts of both *Borne* and *Braxton.* Applying the *Blake* test to the case at bar it is apparent that a motion for summary judgment on the settlement should not be granted. First, it is uncontroverted that Schultz received no legal advice before she signed the release. She was totally unrepresented. In contrast to the defendant in *Braxton, supra,* the Defendants do not allege or offer evidence that Rutherford was either disinterested or independent. Similarly, the record is silent as to whether Rutherford made any recommendations to Schultz that she should retain an attorney or seek other advice before signing the release.

Second, when Schultz signed the release the medical advice given to her was minimal at best. The results of the bone scan were still unavailable to both parties. At the time the release was proffered to Schultz there was no way for either side to know the true extent of her injuries. Therefore, her decision to sign the release cannot be characterized as an informed understanding with a full appreciation of the consequences.

Third, there are allegations in Schultz' affidavit that Rutherford procured her signature through a deception. Taken in the light most favorable to the non-moving party, this certainly raises a question of fact on the issue of overreaching by the defendants.

Finally, there are allegations that Schultz was on medication, Schultz Affidavit ¶¶ 36–38, and that Defendants were aware of that fact. Rutherford Affidavit, October 27, 1994. This raises the question of Schultz' mental competence at the time she signed the release. Mental capacity is a question of fact that must be considered by the court before enforcing a settlement agreement between a seaman and a shipowner. *Borne,* 780 F.2d 1254, 1257.[4]

the adequacy of compensation that Schultz received for the settlement, which is the fourth factor in the *Blake* test.

The facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 631; *Fuller*, 14 F.3d at 1408. Taken as such, the Schultz Affidavit raises issues of triable fact. On this record, based upon the foregoing precedents, the court cannot state with certainty that no reasonable trier of fact would find for the plaintiff on this issue.

### CONCLUSION

For the reasons stated above, the court DENIES the Defendants' motion to enforce settlement and for dismissal.

IT IS SO ORDERED.