WALTER J. ROTHSCHILD, Judge.
|2This is plaintiffs’ second appeal from a trial court ruling granting defendants’ exception of res judicata dismissing the petition in this maritime action. For the rea *23 sons stated herein, we reverse the trial court’s ruling and remand for further proceedings.

Facts and Procedural History

On October 14, 2008, Randy James Rudolph filed this petition for damages against D.R.D. Towing Company, LLC, his employer, and Martin Operating Partnership L.L.P. Plaintiff alleged that on July 18, 2008, he was employed as a deckhand and member of the crew of the M/V RUBY E, which was operated by D.R.D. Towing. While on navigable waters, the M/V RUBY E was struck by the M/V MARTIN CHALLENGER, which was owned and operated by defendant Martin Operating Partnership. Plaintiff alleged that the collision between these vessels caused him to be thrown from his bunk where he was resting, sustaining personal injuries as well as loss of wages and impairment of future earning capacity. Plaintiff |3filed this suit in state court pursuant to the savings to suitors clause of the Jones Act, 28 U.S.C. § 1333, alleging that he is a Jones Act seaman and is entitled to maintenance and cure benefits.[1]
D.R.D. Towing responded with an exception of res judicata and an answer denying the allegations of plaintiffs petition. D.R.D. Towing asserted that plaintiff had executed a receipt and release settling any and all claims within a few days of the incident. Plaintiff opposed the exception and submitted his own affidavit setting out his version of the signing of the release. Following a hearing on February 22, 2010, the trial court rendered judgment with reasons, granting the exception and dismissing the petition. Plaintiff appealed from this ruling, and a panel of this Court vacated the ruling on the basis that neither party had introduced any evidence into the record in support of or in opposition to the exception. The matter was remanded to the trial court for further proceedings. Rudolph v. D.R.D. Towing Co., LLC., 10-629 (La.App. 5 Cir. 1/11/11), 59 So.3d 1274.
On remand, plaintiff filed a supplemental petition naming his wife, Sheena Rudolph, as a plaintiff in this matter. Plaintiffs later filed a second supplemental petition adding a claim for punitive damages for D.R.D. Towing’s failure to satisfy its maintenance and cure obligation to Mr. Rudolph. Thereafter, D.R.D. Towing moved to reset its exception of res judicata for hearing, and attached exhibits thereto. Prior to the hearing, plaintiffs filed a third supplemental petition adding general maritime claims against several additional defendants. Plaintiffs also filed an opposition to D.R.D. Towing’s exception, and attached exhibits in support thereof, including a copy of Mr. Rudolph’s deposition.
I/The exception was heard by the trial court on April 8, 2011, and on the same day, judgment was rendered granting the exception. The trial court subsequently assigned reasons for judgment, finding that Mr. Rudolph had knowingly and voluntarily released all rights against his employer in a document executed on July 16, 2008.
Plaintiffs now appeal from this ruling, arguing that the trial court erred in upholding the validity of the seaman’s release. Plaintiffs also contend that the trial court improperly shifted the burden of proof in this case to Mr. Rudolph, and that the record contains insufficient evidence to support the granting of the exception by the trial court.

Applicable Law and Discussion

Under Louisiana law, a release executed in exchange for consideration is a compromise. Randall v. Martin, 03-1311, *24 p. 4 (La.App. 5 Cir. 2/23/04), 868 So.2d 913, 915. A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La. C.C. art. 3076.
The compromise instrument is governed by the same general rules of construction applicable to contracts. Ortego v. State, Dept, of Transp. and Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words are clear and explicit and lead to no absurd Inconsequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
A valid compromise can form the basis of a plea of res judicata. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 747, n. 7; Ortego v. State, Dep’t of Transp. & Dev., supra. On an exception of res judicata, the burden of proof is on the party who urges the exception to prove its essential elements by a preponderance of the evidence. Ortiz v. Ortiz, 01-1252, p. 4 (La.App. 5 Cir. 5/15/02), 821 So.2d 35, 37. The doctrine of res judicata is interpreted stricti juris, and any doubt regarding whether its requirements have been met must be resolved in favor of maintaining the action. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1215.
The standard of review of a ruling sustaining an exception of res judi-cata is manifest error when the exception is raised prior to the case being submitted and evidence is received from both parties. McKinnis v. Reine, 10-753, p. 7 (La.App. 5 Cir. 4/26/11), 65 So.3d 688, 692. The manifest error/clearly wrong standard authorizes an appellate court to reverse a trial court’s factual finding only if it finds from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). This standard requires that the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding; rather, the reviewing court must review the entire record to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id.
| ,;Also bearing on the granting of the exception in this case is the substantial federal jurisprudence recognizing the special status of seamen and defining the role of state courts in the application of the law with regard to seamen. According to federal law, the burden is upon the one who sets up a seaman’s release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding. Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942).
In Garrett, the United States Supreme Court also held that the Jones Act is to have uniform application throughout the country, and that state courts are bound to proceed in such a manner that all the substantial rights of the parties under controlling federal law would be protected. The court further restated the history by *25 which Congress has sought to safeguard seamen’s rights:
They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees.... If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is, that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable.... And on every occasion the court expects to be satisfied |7that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.
Garrett v. Moore-McCormack Co., supra at 246-247, 63 S.Ct. at 251. (Citations omitted.)
Federal courts have consistently applied the reasoning of Garrett. As explained by our Supreme Court in Neely v. Hollywood Marine, Inc., 530 So.2d 1116, 1121-22 (La.1988):
Seamen are wards of admiralty, and releases or settlements involving a seaman are subject to careful scrutiny. Wink v. Rowan Drilling Co., 611 F.2d 98 (5th Cir.1980), cert, denied 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). The ultimate concern in cases involving the rights of seamen or their family members is not whether the seaman has received what the court believes to be adequate consideration, but, rather, whether the seaman relinquished his rights with informed understanding of his rights and a full appreciation of the consequences when he executed the release. Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599 (5th Cir.1986). A release is not valid unless it has been executed without deception or coercion. Durden v. Exxon Corp., 803 F.2d 845 (5th Cir.1986). The courts of appeal must be particularly vigilant to guard against overreaching when a seaman purports to release his rights to compensation for personal injuries. Borne v. A & P Boat Rentals No. 4, Inc., 780 F.2d 1254 (5th Cir.1986). Releases signed by seamen are given the most careful scrutiny and the burden is on the shipowner to show that the seaman signed the release with full understanding of his rights and the effect of his action. Halliburton v. Ocean Drilling & Exploration Co., 620 F.2d 444 (5th Cir.1980).
Louisiana state courts have also followed this line of reasoning, holding that substantive maritime law controls in state court and the state cannot, by its procedural practice, substantially alter the rights of litigants under substantive maritime law. Lavergne v. Western Co. of North America, Inc., 371 So.2d 807 (La.1979); Morris v. M/V Creole Belle, 394 So.2d 727 (La.App. 3 Cir.1981).
Is At the same time, the Fifth Circuit has cautioned that “if employers are denied any degree of confidence in the finality of settlement, seaman will lose the option to settle since employers will have little incentive to avoid full-scale trial on the merits.” Borne v. A & P Boat Rentals No. 4, Inc., 780 F.2d 1254, 1257 (5th Cir.1986). Thus, courts should not be unduly protective of a seaman who has signed a release fully comprehending the nature of his actions. Transocean Offshore USA, Inc. v. Catrette, 05-6328, 2007 WL 1557338, p. 1 (E.D.La. May 29, 2007), aff’d sub nom., *26 Transocean Offshore USA Inc. v. Catrette, 256 Fed.Appx. 672 (5th Cir.2007).
With respect to the validity of a seaman’s release, courts generally look to four factors:
1. Adequacy of the consideration: Was the plaintiff fairly compensated given the extent of his injuries, and the inherent risk of trying the case?
2. The medical advice available and given to the plaintiff: Was the plaintiff fully advised of his injuries and future prognosis?
3. The legal advice available and given: Was the plaintiff fully advised of his rights?
4. The arms length of the parties: Was there overreaching? Id.
Applying these legal precepts to the case before us, the critical issue presented for our review is whether D.R.D. Towing, as the one who set up Mr. Rudolph’s release, met its burden of proving that the release was executed freely with a full understanding of his rights and the effects and consequences of his action.
In support of its exception of res judica-ta, D.R.D. Towing submitted a copy of a release form executed by Mr. Rudolph on July 16, 2008, three |9days after the incident herein. The “Release of All Rights” states that in exchange for $3,000.00, Mr. Rudolph agreed to release and forever discharge Four Marine, LLC, D.R.D. Towing, LLC and Zito Fleeting, LLC. The release contains a statement by Mr. Rudolph that he read the document from beginning to end and understood that the document was, in his words, a “release of everything.”
At the hearing of this matter, defendant also submitted the testimony of Jack Hoyle, who testified that in his role of consultant, he provides non-legal advice to primarily small boat companies in handling personnel matters involving crew injuries and maritime injuries including maintenance and cure. He stated that he was contacted by D.R.D. Towing in conjunction with the incident involving the M/V RUBY E. Mr. Hoyle stated that he met with D.R.D. Towing representatives and their counsel on the day of the incident herein, July 13, 2008. Three days later, on July 16, 2008, Mr. Hoyle, after being told that Mr. Rudolph wanted to settle his claims, met with Mr. Rudolph and executed a $3,000.00 release with him. Mr. Hoyle stated that he provided the blank form, which he had obtained from a publishing supply company, and that he instructed Mr. Rudolph to read the document and fill in the blanks in his own handwriting. Mr. Hoyle also stated that he recorded the interaction with Mr. Rudolph, and that his secretary made a written transcription of the recording.
Mr. Hoyle further stated that Mr. Rudolph told him during this meeting that he had an appointment with a doctor, although he also stated that he believed that Mr. Rudolph was deemed fit for duty prior to this meeting. He stated that Mr. Rudolph told him he was ready to return to work. Mr. Hoyle testified that the amount of compensation offered to Mr. | inRudolph was set by him as “compensation for the items that he surely lost on the boat, and it was compensation for the unpleasant experience of being involved in something like that.”
Mr. Hoyle stated that the release was in clear terms and self-explanatory, and that he does not give legal advice to seamen. Mr. Hoyle stated that although he read the document along with Mr. Rudolph, he did not explain anything to him regarding his rights of maintenance and cure or his rights for indemnity or medical benefits. Mr. Hoyle stated he was also aware that *27 Mr. Rudolph was not represented by counsel, and would not have engaged him if he was. He stated he told Mr. Rudolph that if he had doubts, he should not sign the document. Further, Mr. Hoyle acknowledged that the witnesses who signed the document were not in the room when the release was executed, and that he did not make a copy of the check presented to Mr. Rudolph.
A copy of the transcript of this interaction was also submitted as a defense exhibit. In the exchange between Mr. Hoyle and Mr. Rudolph, Mr. Rudolph indicated that he had an appointment with a doctor, Dr. Melvin Schultz. Mr. Rudolph also stated he was scheduled to go back on a towboat the following week, and he believed he would be able to do that. The following exchange then occurred:
Q: Okay, and you lost your stuff on the boat, right?
A: Yes.
Q: And, I understand you lived on the boat. You stayed on the boat when you were running it, right?
A: Sometimes, yeah.
Q: Okay. So and your cell phone and you had some other stuff that was lost?
A: Yes sir.
Q: Okay. You and I reached an agreement for $3,000 is that correct?
A: Yes, sir.
InQ: And that’s agreeable to you?
A: Yes, it is.
Q: You understand that in exchange for that money, you are releasing any and all claims you have against DRD Towing Company?
A: Yes, sir.
Mr. Hoyle then read through the terms of the release with Mr. Rudolph and instructed him to write in the answers in the blanks on the form. Mr. Rudolph answered in the affirmative when asked whether he knew that signing the release document settles and ends every right or claim he had for damages as well as for past and future maintenance and cure and wages. Mr. Rudolph then dated and signed the agreement. However, a review of the transcript of the interaction fails to contain a statement by Mr. Hoyle that if Mr. Rudolph had any doubts he should not sign the document.
Following Mr. Hoyle’s testimony, counsel for both parties presented oral argument on the validity of the release. Further, plaintiffs’ counsel submitted exhibits, including a copy of the deposition of Mr. Rudolph taken by defendant.[2]
In his deposition, Mr. Rudolph stated that he was told by his supervisor after the accident that his medical bills would be covered and that he could return to work after the injuries were taken care of. He stated he did not have a full understanding of the release document, and he believed that he was settling his claims for his possessions lost when the boat sunk. Mr. Rudolph stated that he believed by agreeing to a “release of everything,” he believed it was to compensate him for everything he lost on the boat. Mr. Rudolph stated he “was under a lot of pressure just to sign whatever papers they gave me with *28 the assurance all of my doctors and, you know, stuff would be taken care of.” Mr. Rudolph stated that he 112was “coached” at how to complete the release document, and did not understand that he was releasing all of his future claims, including maintenance ánd cure.
Also attached to the copy of Mr. Rudolph’s deposition is a statement he made on July 16, 2008 to Rick Kessenich, an attorney representing D.R.D. Towing. This statement was made prior to the execution of the release. In that statement, Mr. Rudolph informed the attorney that his neck and back had been hurting since the accident and that he had an appointment with Dr. Melvin Schultz for later that day.
The record in this case clearly indicates that Mr. Rudolph was not represented by counsel at the time he executed the release, that he had not obtained legal advice at all, and that D.R.D. was aware of this fact. There is also nothing in the record to show that D.R.D. advised Mr. Rudolph of his right to obtain counsel. Further, the record indicates that Mr. Rudolph stated that he was experiencing health issues following the accident, that he had an appointment to see a doctor for these issues, and that D.R.D. was aware of this fact as well.
In its reasons for judgment, the trial court determined that actually seeking legal and medical advice is not a prerequisite to executing the release, but “the availability of said advice was key.” The trial court seems to hold that because plaintiff knew legal and medical advice were available, defendant met its burden of proving the release was valid. However, this holding ignores well-established jurisprudence regarding the special status of seaman which requires careful scrutiny of a release and a finding that the negotiations were at arm’s length and in good faith.
In the present case, the burden is on D.R.D. Towing to show that they discharged their obligations to Mr. Rudolph as articulated by federal and state | ^jurisprudence. After a careful review of the record, we find that D.R.D. Towing has not met its burden.
First, the settlement amount of $8,000 is obviously not adequate to cover Mr. Rudolph’s property losses as well as any medical expenses sustained in light of defendant’s knowledge that plaintiff may have been injured. Defendant was aware that plaintiff lost his personal computer, his cell phone, his car key, and other personal items when the boat sank. Further, at the time of execution of the release, Mr. Rudolph was not represented by counsel, and there was no proof presented that he was informed that he was free to hire counsel or to consult an attorney prior to signing the release. The settlement negotiations took place in defendant’s offices three days after the incident herein. Mr. Rudolph initially met with an attorney representing D.R.D. Towing, and, shortly afterwards, met with Mr. Hoyle, who had over 20 years of experience in settling claims and admittedly stated he does not offer legal advice to seamen.
In addition, a review of the transcript of the execution of the release, which was submitted as a defense exhibit, indicates that Mr. Hoyle read the release to Mr. Rudolph and instructed him on how to fill in the blanks. Although the release was written in layman’s terms, there was no explanation of the legal rights Mr. Rudolph was forfeiting by signing the release. As stated by the Fifth Circuit in Trans-ocean, a reading of the release contract to the seaman is not sufficient under Garrett to affect a valid release. Transocean Offshore USA Inc. v. Catrette, 256 Fed.Appx. 672, 674 (5th Cir.2007). Our review of the transcript of the negotiations fails to con *29 vince us that Mr. Rudolph relinquished his rights to future claims against D.R.D. Towing with informed understanding. Under these circumstances, we find that D.R.D. Towing failed to demonstrate that the release document was “executed | ufreely, without deception or coercion, and that it was made by the seaman with a full understanding of his rights.” Garrett, 317 U.S. at 248, 63 S.Ct. 246.
Secondly, both Mr. Hoyle and counsel for D.R.D. Towing were aware that Mr. Rudolph may have been experiencing medical issues following the accident, and although he had an appointment scheduled, he had not yet seen a doctor or obtained any medical advice. Nevertheless, Mr. Hoyle required Mr. Rudolph to read and rewrite in his own handwriting the following provision in the standard-form release document:
I know that doctors and other persons make mistakes, and I am taking the risk that what they may have told me is wrong. If that should be the case, it is my loss, and I cannot back out of the settlement.
Clearly, as Mr. Rudolph had not yet seen a doctor or been given any medical advice, this language in the document lends support to Mr. Rudolph’s claim that he did not fully understand that he was relinquishing all medical claims for any injuries he may have sustained. Further, there is no reference in the transcript of the negotiations as to Mr. Rudolph’s potential Jones Act claim for maintenance and cure, and nothing in the record indicates that this claim was explained to Mr. Rudolph prior to execution of the release.

Conclusion

Taking this entire factual situation into consideration, it is clear that Mr. Rudolph received no legal advice in accepting this inadequate settlement and that he had not obtained medical advice on his condition prior to executing the release document. Mindful of our duty to carefully scrutinize such a release, we are unable to find that Mr. Rudolph signed the release with full understanding and knowledge of his rights and a full appreciation of the consequences of the release. As a result, we find that D.R.D. Towing has failed to meet its burden of proving 11Bthe seaman’s release was valid. The release must therefore be found to be invalid and set aside, and we conclude that the trial court erred in granting defendant’s exception of res judi-cata which was based thereon. Accordingly, the judgment is hereby reversed and the matter is remanded to the trial court for further proceedings. D.R.D. Towing shall bear all costs of this appeal.

REVERSED AND REMANDED

. Plaintiff apparently has a suit pending in federal court as well.

. At the hearing, defense counsel objected to the introduction of this exhibit on the basis that Mr. Rudolph was not present at trial, but the trial court allowed it. Although defendant contends in brief that the exhibit was improperly admitted on the basis of La. C.C.P. art. 1450 and may not be considered as evidence, defendant failed to seek supervisory review of this ruling and does not answer the appeal or properly assign this as error. See, Uniform Rules, Courts of Appeal, Rule 1-3 and La. C.C.P. art. 2133. Accordingly, we will not address this issue herein.